**UNITED STATES of America**

**v.**

**CLAYTON–KENT BUILDERS, INC.**

**Civ. A. No. 71–327.**

United States District Court,
M. D. Louisiana.

June 26, 1974.

George T. Rita, Tax Div., U. S. Dept. of Justice, Washington, D. C., Robert S. Leake, Asst. U. S. Atty., M. D. La., Baton Rouge, La., for plaintiff.

Neil H. Mixon, Jr., Theodore L. Jones, McCollister, Belcher, McCleary & Fazio, Baton Rouge, La., for defendant.

E. GORDON WEST, District Judge:

This is a civil action brought by the United States of America in an effort to

recover certain withholding and Federal Insurance Contribution Act (F.I.C.A.) taxes allegedly owed by the defendant, Clayton-Kent Builders, Inc., on behalf of Allen R. Lavergne and Rufus L. Lavergne, d/b/a Lavergne Brothers, a partnership having its prime place of business in Baton Rouge, Louisiana. The facts are undisputed and have been stipulated to be as follows:

### "STIPULATION OF FACTS"

" \* \* \*

"1. On October 8, 1971, the United States of America brought a civil action against Clayton-Kent Builders, Inc., to collect a sum equal to the outstanding federal tax liability for withholding and FICA taxes for the first, second and third quarters of 1970 due by Allen R. Lavergne and Rufus L. Lavergne, d/b/a Lavergne Brothers, a partnership having its prime place of business at 10525 Jefferson Highway, Baton Rouge, Louisiana. The Lavergnes were employers within the meaning of the Internal Revenue Code of 1954.

"2. The suit was brought with the authorization and at the request of the Chief Counsel, a delegate of the Secretary of the Treasury, and at the direction of the Attorney General of the United States.

"Clayton-Kent Builders, Inc., is a corporation organized under the laws of the State of Louisiana and maintains its offices at 7940 Jefferson Highway, Baton Rouge, Louisiana.

"4. In November of 1969, Allen R. Lavergne and Rufus L. Lavergne, a partnership doing business as and hereinafter referred to as Lavergne Brothers, entered into a verbal contract with the defendant, Clayton-Kent Builders, Inc., whereby the Lavergnes, as independent contractors, agreed to perform certain masonry work as subcontractors for the defendant.

"5. The construction projects on which the Lavergne Brothers contracted to perform masonry work were the Lorraine Apartments and Normandy Apartments known as the French Provinces Project.

"6. Under the contract the Lavergne Brothers were to lay brick on the Lorraine and Normandy projects for the contract rate of $103 per thousand for brick laid in place, and to provide their own labor, tools, insurance, masonry, and other equipment, scaffolding and scaffolding boards, and brick ties.

"7. On March 13, 1970, a Notice of Levy, attached hereto as Plaintiff's Exhibit 1, was served upon the defendant, herein, demanding and seizing all property, rights to property, moneys or credits of the taxpayers, Allen R. and Rufus L. Lavergne, then in the possession of the defendant. The tax liabilities of the Lavergnes shown on the Notice of Levy were for employment taxes for the years 1968 and 1969 in the total amount of $65,176.84.

"8. Prior to the Notice of Levy served on March 13, 1970, a superintendent for Clayton-Kent and Rufus Lavergne for the Lavergne Brothers, made a weekly count (generally on each Thursday morning) of brick laid during the previous week. Each count was then marked with 'keel' to indicate the starting point for the following week's count. Brick laid as counted in place were then calculated at $103 per thousand brick. On Friday of each week the Lavergne Brothers drew a portion of funds earned as per the actual brick count in place as counted on the preceding day, less retainage. After March 13, 1970, the same weekly brick count procedure was followed but the Lavergne Brothers were not permitted to draw any portion of amounts earned under contract.

"9. Following the Notice of Levy in which the defendants were apprised of the delinquency of the taxpayer for employment taxes for the years 1968 and 1969 in the amount of $65,176.84, Clayton-Kent established the following procedure with the Lavergne Brothers:

"From the pay period following March 13, 1970 and continuing weekly through and including September 30, 1970, the

Lavergne Brothers would prepare and execute the payroll checks for their individual employees together with an attached stub showing the gross wage payable and the deductions, including income, withholding and FICA taxes and the net wage. Charles Hill (an employee of Lavergne Brothers) or Rufus Lavergne would then have the employees endorse the checks and then Charles Hill or Rufus Lavergne would take the endorsed checks and stubs to the appropriate person employed by the defendant, Clayton-Kent Builders, Inc. and defendant would then exchange its check to the individual employee of Lavergne Brothers for the Lavergne Brothers' check to that employee but only in the net amount payable to the employee of Lavergne Brothers. Charles Hill or Rufus Lavergne would then distribute the Clayton-Kent Builders, Inc., checks to the individual Lavergne Brothers employees, who in turn would cash them. See Plaintiff's Exhibits 22, 23 and 24 attached hereto.

"At the time that Lavergne Brothers made out the checks referred to in the above paragraph, there were insufficient funds in their checking account at the bank upon which said checks were drawn.

"10. Subsequent to the service of the Notice of Levy on Clayton-Kent, Revenue Officer Rauch contacted the defendant on eight or nine occasions to determine the status of that levy and on several of those occasions advised either Mr. Clayton or Mr. Kent, Vice-President and President, respectively, of the defendant company that the Lavergne Brothers were unable to pay and were not keeping current with the employment taxes on the job they were then performing for defendant.

"11. None of the Lavergne Brothers' checks so made out and endorsed and delivered to Clayton-Kent Builders, Inc., were ever deposited or negotiated by Clayton-Kent. Instead, Clayton-Kent Builders, Inc., offset the amounts of the aforesaid checks against monies due the Lavergne Brothers under their construction contract.

"12. For the first three quarters of 1970 the Lavergne Brothers, Rufus L. Lavergne and Allen R. Lavergne, incurred the following tax liability, no part of which has been paid, by virtue of the contracting job which they were performing for the defendant:

First Quarter 1970:

| | | |
|---|---|---|
| Gross Wages | — | $ 3,979.32 |
| Income withholding tax | — | 410.30 |
| FICA tax | — | 190.52 |
| Total tax | | $ 600.82 |

Second Quarter 1970:

| | | |
|---|---|---|
| Gross Wages | — | $34,959.55 |
| Income withholding tax | — | 3,973.71 |
| FICA tax | — | 1,656.68 |
| Total tax | | $ 5,630.39 |

Third Quarter 1970:

| | | |
|---|---|---|
| Gross Wages | — | $31,189.66 |
| Income withholding tax | — | 2,954.61 |
| FICA tax | — | 1,448.64 |
| Total tax | | $ 4,403.26 |

"13. The amounts of the checks issued by Clayton-Kent under this arrangement for the first three quarters of 1970 totaled $59,303.93.

"14. On March 18, 1970, counsel for defendant wrote the following letter to Internal Revenue Service:

" 'Dear Mr. Major:

This will confirm our telephone conversation this date in which I advised you that we represent Clayton-Kent Builders, Inc., and they have contacted us concerning the levy which has been filed with them as to the taxpayers Allen R. and Rufus L. Lavergne. In accordance with our telephone agreement I have advised Mr. Clayton that he should pay the laborers doing the actual work for the Lavergne Brothers their wages each week when due and should furnish to your office an itemized list of the wages thus paid. All sums due Lavergne Brothers above the actual wages paid will be transmitted to you.

Thank you for your courtesy and attention in this matter.'

"No amount was ever paid over to the Internal Revenue Service pursuant to this letter, nor was any itemized list ever furnished.

"15. In early September of 1970, Revenue Officer Rauch was apprised of the actual mechanics of the check cashing procedure set out in paragraph 10, *supra*, and he advised Mr. Clayton or Mr. Kent that they were subjecting the corporation to personal liability for the taxes of the Lavergne Brothers, Allen & Rufus, but the method was continued notwithstanding Mr. Rauch's warning to the completion of the masonry contract.

"16. The method agreed to by Clayton-Kent Builders, Inc., and the Lavergne Brothers for payment was tied into the work performed on the contract as set out in paragraph six (6), *supra,* the rate payable to the taxpayers was at $103 per thousand brick laid.

"17. In the method of payment as set forth in paragraph 9, Clayton-Kent Builders, Inc., exchanged no checks in excess of the amount actually shown to Lavergne Brothers' credit by brick count of $103 per thousand. (Def. Ex. 1.)

"18. Subsequent to March 13, 1970, Lavergne Brothers supplied Internal Revenue Service a list of accounts due Lavergne Brothers totaling approximately $68,000 which was determined by the Internal Revenue Service to be worthless.

"19. On November 18, 1971, a Notice of Levy in the sum of $5,875.08 for the last quarter of 1970, a period not in suit, was served on the American Bank & Trust Co. of Baton Rouge, Louisiana, against the bank account of the Lavergne Brothers. Said levy was released on November 29, 1971, as set forth in defendant's Exhibit attached."

This stipulation was signed by all counsel and filed in the record hereof.

The questions presented are: (1) Whether or not, under the facts of this case, the defendant is a "person" who may be held personally liable for the payment of a sum equal to the taxes (together with interest) required to be de-ducted and withheld from the payments paid by it to employees of Lavergne Brothers under the provisions of Section 3505(a) of the Internal Revenue Code of 1954, and (2) Whether or not, under the facts of this case, the defendant is a "person" who may be held liable for a sum equal to the taxes (together with interest) which were not paid to the United States by Lavergne Brothers in connection with wages paid to Lavergne's employees with funds furnished or supplied by the defendant, pursuant to the provisions of Section 3505(b) of the Internal Revenue Code of 1954.

The two sections of the Revenue Code referred to read as follows:

"§ 3505. LIABILITY OF THIRD PARTIES PAYING OR PROVIDING FOR WAGES

"(a) Direct payment by third parties. —For purposes of sections 3102, 3202, 3402, and 3403, if a lender, surety, or other person, who is not an employer under such sections with respect to an employee or group of employees, pays wages directly to such an employee or group of employees, employed by one or more employers, or to an agent on behalf of such employee or employees, such lender, surety, or other person shall be liable in his own person and estate to the United States in a sum equal to the taxes (together with interest) required to be deducted and withheld from such wages by such employer.

"(b) Personal liability where funds are supplied.—If a lender, surety, or other person supplies funds to or for the account of an employer for the specific purpose of paying wages of the employees of such employer, with actual notice or knowledge (within the meaning of section 6323(i)(1)) that such employer does not intend to or will not be able to make timely payment or deposit of the amounts of tax required by this subtitle to be deducted and withheld by such employer from such wages, such lender, surety, or other person shall be liable in his

own person and estate to the United States in a sum equal to the taxes (together with interest) which are not paid over to the United States by such employer with respect to such wages. However, the liability of such lender, surety, or other person shall be limited to an amount equal to 25 per cent of the amount so supplied to or for the account of such employer for such purpose."

It is the opinion of this Court that both of the questions presented must be answered in the affirmative, and that the defendant, Clayton-Kent Builders, Inc. is liable to the United States for the taxes and interest sought in this suit whether we apply Section 3505(a) or Section 3505(b) or both.

Section 3505(a) imposes liability for taxes required to be deducted and withheld from wages upon a "lender, surety, or other person" who is not the employer but who pays the wages directly to the employee for the account of the employee's employer. In this case, there is no doubt but that the defendant did, in fact, pay wages directly to the employees of a third party, Lavergne Brothers. It makes no difference that Lavergne first issued its checks to its employees and then picked up those endorsed checks and substituted therefor the checks of the defendant. The simple fact is that when the attempted subterfuge is excised, Lavergne's employees were paid the net amount of their wages by a third party, the defendant herein, and no one turned the taxes that were withheld over to the plaintiff as required by law. It is obvious that both Lavergne and Clayton-Kent knew that Lavergne's checks were worthless when they were drawn. The fact that Lavergne first issued its worthless checks to its employees and then substituted therefor the valid checks of Clayton-Kent for the net amount of wages due does not alter the fact that the payment of wages by Clayton-Kent to Lavergne's employees was a direct payment as contemplated by Section 3505(a). The defendant argues that when it issued its checks to Lavergne's employees it merely "cashed checks for Lavergne Brothers' employees out of funds belonging to Lavergne Brothers but held by defendant." This argument is specious to say the least. The checks issued by Lavergne Brothers and endorsed by the various employees were not, in any sense of the word, cashed. They were never deposited or negotiated by Clayton-Kent and indeed they could not have been because Lavergne did not have sufficient funds in the bank to cover the checks, and the evidence points clearly to the fact that both Lavergne and Clayton-Kent were fully aware of this fact. Hence it makes no sense to suggest that when Clayton-Kent issued its checks to Lavergne's employees, it, Clayton-Kent, was merely "cashing" Lavergne's checks. The obvious fact is that Clayton-Kent wanted to make sure that Lavergne's employees were paid so that the work undertaken by Lavergne could continue to completion, and so it, Clayton-Kent, paid the employees of Lavergne directly. Thus these payments fall directly under the unambiguous provisions of Section 3505(a) and make Clayton-Kent directly liable to the United States for all taxes that were required to be deducted and withheld from the wages paid to Lavergne's employees. And it matters not that the money used by Clayton-Kent to pay the wages was money that was due and owing to Lavergne for work already completed. This point was specifically dealt within Abrams et al. v. United States, 333 F.Supp. 1134 (S.D.W.Va.—1971), wherein the Court said:

> "Under Sections 3505(a) and 3505(b), the statutory phrase 'lender, surety, or other person' contemplates any person who performs the acts set forth in the statute, whether that 'person' be a jobber, a prime contractor or simply a creditor. Any person who pays employees directly is liable under Section 3505(a). Julyn contends, however,

that since all payments made by it to McDowell were made as a debtor of McDowell for work completed by the latter under a long-standing arrangement for advances on work in progress, it does not fall within the term 'other person' in the context of Section 3505. While the evidence does not support this factual contention of Julyn, even if Julyn were cast in this posture, such an arrangement would not automatically immunize Julyn from liability under the statute. Any person who meets the other requirements of Section 3505, i. e., notice and specific purpose, is subject to the statutory liability regardless of the person's status as a debtor, creditor, prime contractor or jobber. c.f. United States v. Algernon Blair, Inc., 441 F.2d 1379 (CA5, May 6, 1971); United States v. Whilmar General Contractors, Inc., 25 A.F.T.R.2d 1306 (N.D.Tex., Jan. 29, 1970)."

When the defendant issued its checks directly to the employees of another in payment of wages, it brought itself within the purview of Section 3505(a) and became liable to the United States for the payment of all taxes (including interest thereon) required to be deducted and withheld from those wages. Nothing else was required under Section 3505(a).

And even if there was any question as to defendant's liability under Section 3505(a), there could be none as to its liability under Section 3505(b). The conclusion is inescapable from the evidence in this case that the defendant knew that the employer, Lavergne, could not or would not make timely payments or deposit of the amount of taxes required to be deducted and withheld from the wages of its employees. The defendant had actual knowledge of the fact that Lavergne had not paid the withholding taxes due in 1968 and 1969 in the amount of $65,176.84. The defend-

ant had been served with a Notice of Levy in connection with those unpaid taxes. This notice was served on the defendant in March of 1970. Subsequent to the service of the Notice of Levy, the defendant was contacted some eight or nine times by a Revenue Officer and advised that Lavergne was not paying his back taxes and was not keeping current with the taxes due in connection with wages paid on the job he was performing for the defendant. In September of 1970 the Revenue Officer advised the defendant that it was incurring a personal liability for these taxes by paying wages directly to Lavergne's employees, but the defendant continued to do this until the completion of the job. Thus, it is obvious that the defendant did directly supply funds for the payment of wages to another employer's employees, with actual knowledge of the fact that the employer, Lavergne, was unable or unwilling to make timely payment or deposit of the amount of tax required to be withheld from those wages. This is all that is required for Clayton-Kent to be liable for these taxes (together with interest thereon) under the provisions of Section 3505(b), subject, of course, to the 25 per cent of the total wages paid limitation contained therein. But the 25 per cent limitation is not applicable in this case because the amount claimed by the United States is less than 25 per cent of the total wages paid by the defendant.

Therefore, it is the opinion of this Court that the defendant, Clayton-Kent Builders, Inc., is indebted to the United States in the sum of $10,634.47, representing Lavergne's unpaid withholding and F.I.C.A. tax liability for the first three quarters of the year 1970, together with interest thereon as provided by law, and for all costs of this suit. Counsel for the United States shall prepare and present to the Court a proposed judgment in accordance herewith.