UNITED STATES of America, Plaintiff-Appellant,

v.

KENNEDY CONSTRUCTION COMPANY OF NSB, INC., Defendant-Appellee.

No. 76–2770.

United States Court of Appeals, Fifth Circuit.

May 4, 1978.

John L. Briggs, U. S. Atty., A. Thomas Mihok, Asst. U. S. Atty., Orlando, Fla., Gilbert E. Andrews, Chief, App. Sect., Grant W. Wiprud, Stanley S. Shaw, Jr., Attys., Tax Div., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

G. Larry Sims, E. William Crotty, Daytona Beach, Fla., for defendant-appellee.

Before WISDOM, TJOFLAT and VANCE, Circuit Judges.

VANCE, Circuit Judge.

This is a suit brought by the United States of America against a general contractor for unpaid withholding and Federal Insurance Contributions Act (F.I.C.A.) taxes aggregating $14,636.42 plus accrued interest which had been withheld from the wages of a subcontractor's employees.

The general contractor, Kennedy Construction Company of NSB, Inc. (Kennedy), was engaged in the construction of a condominium at New Smyrna Beach, Florida. It entered into a subcontract with Raybrun Industries, Inc. (Raybrun), as the stucco subcontractor on or about April 21, 1972. Raybrun developed an acute cash shortage by reason of its not having received full payment from previous jobs, and by March 6, 1973 was unable to meet its payroll. On that day Kennedy entered into a supplemental agreement with Raybrun under which Kennedy was to provide funds sufficient to make the wage payments due Raybrun's employees.

The supplemental agreement required that a separate "special payroll checking account" be set up in Raybrun's name at a local bank. All checks drawn against said account required the signature of one of two named officials of Kennedy as well as the signature of a named officer of Raybrun.

Under the supplemental agreement Raybrun was required each week to deliver to Kennedy a payroll summary showing the itemized sums owed to each employee, the taxes to be deducted and the net wages due, together with the individual payroll checks payable to Raybrun's employees. After it checked the payroll summary Kennedy issued its check for the aggregate net wages to Raybrun for deposit in the special payroll checking account. Individual payroll checks, which had been delivered to Kennedy for verification by comparison with its superintendent's job diary, were countersigned by Kennedy, delivered to Raybrun and delivered to the individual employees by Raybrun.

Although Raybrun had agreed in the supplemental agreement to do so, it failed to

make timely payments of the federal withholding and F.I.C.A. taxes which had been withheld from the employees' wages. As a consequence the sum claimed by the United States is due and unpaid.

Suit was brought against Kennedy for collection of the sum owed under the provisions of subsections 3505(a) and 3505(b) of the Internal Revenue Code. 26 U.S.C. §§ 3505(a), 3505(b). The case was tried by the district court which held for the defendant under both subsections. The government now appeals only the holding under subsection 3505(a). That subsection provides:

For purposes of sections 3102, 3202, 3402 and 3403, if a lender, surety, or other person, who is not an employer under such sections with respect to an employee or group of employees, pays wages directly to such an employee or group of employees, employed by one or more employers, or to an agent on behalf of such employee or employees, such lender, surety, or other person shall be liable in his own person and estate to the United States in a sum equal to the taxes (together with interest) required to be deducted and withheld from such wages by such employer.

The government urges on appeal as it did at trial that having paid wages to Raybrun's employees Kennedy is liable for the unpaid taxes under this subsection.

The pivotal question is whether wages were paid by Kennedy "directly" to such employees. Because the checks were delivered to the employees by Raybrun the district court concluded that the wages were not paid "directly" by Kennedy. On the basis of such conclusion it held that there was no liability under subsection 3505(a). We disagree that the payments were not made "directly" by Kennedy and therefore reverse.

The provisions under which suit was brought were added to the Internal Revenue Code by adoption of the Federal Tax Lien Act of 1966, Pub.L.No.89–719, § 105, 26 U.S.C. § 3505. Its history is quite clear. As was pointed out in Senate Report No.

1708, 1966 *U.S. Code Congressional and Administrative News,* p. 3742, only "employers" were liable under prior law for taxes withheld and deducted from wages. The senate committee took note, however, that

There are cases, however, where persons other than the employers directly, or indirectly, pay the wages. Where this occurs, problems have arisen because, in some instances, these other persons have paid employees only the "net" wages and have not paid, either to the employees or to the Government, the withholding taxes due the Government. Under current law in these cases the employees receiving the net wages receive credit for the taxes required to be withheld, whether or not the Government is paid the amount of these taxes. While the employers in these cases are liable for the payment of the withholding taxes, they are likely to be without financial resources and, as a result, recourse against them may well be fruitless. Under current law, recourse cannot be taken against the third persons who directly or indirectly paid the net wages since they are not "employers" and, therefore, are not liable for the tax.

The situation in the instant case is typical of those which Congress considered in 1966. As in the usual situation the temptation which was confronting the general contractor was to keep an impecunious subcontractor working at a minimum cost until the job was finished. Prior to the 1966 act the situation apparently was a common one with the United States frequently left "holding the bag." Congress approached the problem in two separate ways. What is now 3505(b) imposed liability on a third person who supplied funds to an employer for the purpose of paying wages with actual knowledge that the withholding taxes were not being paid. 3505(a) imposes liability when payments by a third party are made directly to the employees irrespective of knowledge of the employer's nonpayment of withholding taxes. The intention was clearly expressed in the senate report:

Your committee believes that where third persons finance employers' payrolls—sub-

ject to the conditions set forth below—they should be liable for the withholding taxes. It sees no reason for distinguishing between the portion of the total wages which is owned and should be paid to employees (the "net" wages), and the portion of the wages which is owed and should be paid to the Government in the form of withholding taxes. These taxes are, in reality, a portion of an employee's wages for which he is given credit in the computation of his own tax liability; the fact that this portion of the wages is payable directly to the Government does not alter its basic nature. *Id.* at 3743.

In *United States v. Algernon Blair, Inc.,* 441 F.2d 1379 (5th Cir. 1971) this court traced the history and purpose of subsection 3505(b) after which it stated—in language which is equally applicable to 3505(a):

A prime contractor is not compelled to make payroll advances to a financially strapped sub-contractor. If its chooses, however, to do so, with notice of the situation, we perceive no Constitutional infirmity in Congress requiring that the lender shall not adopt a method which defeats the taxes due on that payroll. Indeed, to hold otherwise would be to fly in the face of the specific language of the Constitution.

The United States sued this particular defendant under both subsections. The evidence was in dispute with respect to Kennedy's knowledge of Raybrun's nonpayment of withholding taxes. The trial judge's finding that Kennedy did not have such knowledge and the government's failure to appeal forecloses any further consideration of that issue. Kennedy's lack of knowledge is controlling with respect to the claimed 3505(b) liability but is not an element of 3505(a).

The trial court also found that under Florida law payment by check is made, at least conditionally, upon delivery of the check. Expressly applying this provision of state statute, it held that payment was made by Raybrun rather than by Kennedy. In this particular we find that the trial court erred. Such an approach to the appli-

cation of the Internal Revenue Code would yield as many results as there are local jurisdictions. In this connection the supreme court in *Burnet v. Harmel,* 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199 (1932), stated:

Here we are concerned only with the meaning and application of a statute enacted by Congress in the exercise of its plenary power under the constitution, to tax income. The exertion of that power is not subject to state control. It is the will of Congress which controls, and the expression of its will in legislation, in the absence of language evidencing a different purpose, is to be interpreted so as to give a uniform application to a nation-wide scheme of taxation. . . . State law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law.

The system by which payment was provided to Raybrun's employees is strikingly similar to the one involved in *United States v. Arnold,* 400 F.Supp. 1118 (N.D.Calif. 1975). Although different in execution it is the same in result as that utilized in *United States v. Clayton-Kent Builders, Inc.,* 378 F.Supp. 1109 (M.D.La.1974), aff'd 510 F.2d 1406 (5th Cir. 1975). Both cases resulted in holdings of 3505(a) liability on the part of the general contractor. Kennedy undertakes to distinguish the present case on the basis of factual differences. Questions of liability under its approach would be resolved on the minutia of mechanical variations rather than upon the substance of the transaction.

■ The controlling principle was stated by the supreme court in *Commissioner of Internal Revenue v. Court Holding Company,* 324 U.S. 331, 334, 65 S.Ct. 707, 708, 89 L.Ed. 981 (1945), as follows:

The incidence of taxation depends upon the substance of a transaction. . . .
To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress.

Its amplification in *Kanawha Gas & Util. Co. v. Commissioner of Internal Revenue,* 214 F.2d 685, 691 (5th Cir. 1954) has particular application here:

> This basic concept of tax law is particularly pertinent to cases involving a series of transactions designed and executed as parts of a unitary plan to achieve an intended result. Such plans will be viewed as a whole regardless of whether the effect of so doing is imposition of or relief from taxation. The series of closely related steps in such a plan are merely the means by which to carry out the plan and will not be separated.

■ The true nature of this transaction devolves from the following critical facts: At the end of each pay period Kennedy made advances of funds in the amount required and for the specific purpose of paying net wages to specific employees. The funds were advanced only after verification by Kennedy that the sums proposed to be paid were being paid to employees for work on Kennedy's job. Payment was made from an agreed upon checking account into which the funds provided by Kennedy had been deposited. Payment to the employees was made by checks which were required to be signed and were signed by Kennedy.

We conclude that the substance of the transaction was a direct payment by Kennedy to the employees. This is precisely the situation which Congress sought to reach and did reach by the 1966 act. By operation of subsection 3505(a) Kennedy's payment of wages direct to Raybrun's employees resulted in Kennedy's simultaneously incurring a liability for the taxes which were due to have been withheld.

It follows that the judgment of the court below is due to be reversed and the cause remanded with instructions that judgment be entered in favor of the United States and against Kennedy in the amount of the unpaid taxes which were required to be deducted in connection with the net wages paid by Kennedy to Raybrun's employees, together with interest.

REVERSED and REMANDED.