Marvin G. DERR, Plaintiff,

v.

UNITED STATES of America, Defendant and Third–Party Plaintiff,

v.

STEVENS CONSTRUCTION CORP., Gary M. Cirves, Gregory A. Cirves, and Edmund J. Johnson, Third–Party Defendants.

STEVENS CONSTRUCTION CORP., a Wisconsin Corporation, Plaintiff,

v.

UNITED STATES of America, Defendant and Third–Party Plaintiff,

v.

Gary W. CIRVES, Gregory A. Cirves, Edmund J. Johnson, and Marvin G. Derr, Third–Party Defendants.

Nos. 76–C–623, 79–C–1.

United States District Court, W. D. Wisconsin.

July 22, 1980.

E. Clark Arnold, Columbus, Wis., for Marvin G. Derr.

John J. Ottusch, Milwaukee, Wis., for Stevens Const. Corp.

Jean E. Kilpatrick, Tax Div., Dept. of Justice, Washington, D. C., for the U. S.

John Koberstein, Madison, Wis., for third-party defendant Johnson.

Michael Nowakowski, Madison, Wis., for third-party defendants Cirves.

## OPINION AND ORDER

CRABB, Chief Judge.

These consolidated cases concern the liability of Stevens Construction Corp. for payment of withholding taxes of employees of Cirves Electric Corporation and J & C Plumbing, Inc., for the fourth quarter of 1974.[1] The cases are before the court on the government's motion for summary judgment. For the purpose only of deciding the motion, I find that there is no genuine issue with respect to any of the following material facts.

## FACTS

Stevens Construction Corp. is a construction company located in Milwaukee, Wisconsin. During the five–year period between 1969 and 1974, Stevens constructed a number of buildings in and around Madison, Wisconsin. Some of Stevens's work was subcontracted to two corporations: Cirves Electric Corporation and J & C Plumbing, Inc.

Stevens had a good business relationship with the two companies, but no personal, family, or financial connection with either of them.

During 1974, Stevens employed Cirves Electric and J & C Plumbing as subcontractors on an apartment complex project in Madison. Toward the end of 1974, both subcontractors began to develop financial difficulties. Because of this, Stevens began to issue joint payroll checks to Cirves Electric and to J & C Plumbing employees for net payroll amounts; that is, paychecks made out to both the employer subcontractor and the individual employee.

On payday, Cirves Electric and J & C Plumbing would inform Stevens through their payroll clerk of the net payroll amounts. Stevens would issue the checks and forward them to the appropriate employer, either Cirves Electric or J & C Plumbing, but not to the individual employees themselves.

Stevens began this practice on October 23, 1974, and continued it through the end of the year. Because of the practice, the Internal Revenue Service made an assessment against Stevens for the failure of Cirves Electric and J & C Plumbing to pay over their withheld taxes from October 23, 1974, through the end of the year.

The assessment against Stevens attributable to Cirves Electric was $6,283.14 and attributable to J & C Plumbing was

---

1. All of the parties with the exception of the United States and Stevens have reached a tentative settlement of their claims. This opinion is directed only to the issue of Stevens's liability.

$9,241.50. Stevens made partial payment of $2000.00 to the Internal Revenue Service and brought a suit for refund of that amount (79–C–1). The government answered, counterclaimed, and added as third–party defendants, Gary and Gregory Cirves, Marvin Derr, and Edmund Johnson. That action was consolidated with 76–C–623, brought by Marvin Derr.

### OPINION

The government contends that Stevens is liable under 26 U.S.C. § 6672 as a person responsible for paying over withheld taxes and as a third party paying wages directly to an employee under 26 U.S.C. § 3505. On this motion, the government is pursuing only its claim under § 3505.

Section 3505 is a relatively new statute, enacted to meet tax–collection problems in the construction business resulting from net payroll financing. Net payroll financing is the practice of lending money to financially troubled contractors in amounts sufficient to meet the payroll but not the withholding taxes. If the contractor becomes insolvent, the government never can collect the unpaid withholding taxes, although the employees get credit for the amounts withheld from their wages. Under § 3505, however, liability for the unpaid withheld taxes can be imposed upon the lender in certain circumstances. Under § 3505(b), liability can be imposed upon the supplier of funds to an employer for the purpose of paying wages where the supplier has actual notice that the employer to whom the funds are advanced will be unable to pay the withholding taxes. Under § 3505(a), liability can be imposed upon a supplier of funds when payments are made directly to the employees even if the supplier does not have actual knowledge that the employers will be unable to pay the withholding taxes.

Stevens contends that the record does not support liability under § 3505(a), because the payroll checks were never sent directly to the subcontractors' employees and the record does not show that the employees were actually paid by the checks Stevens prepared; or under § 3505(b), because the record contains nothing to show that Stevens knew that the subcontractors would be unable to pay the withholding taxes.

For the purpose of this opinion, § 3505(b) can be ignored. The only issue is whether the procedure by which Stevens prepared payroll checks constitutes direct payment within the meaning of § 3505(a).[2] Stevens contends that it does not, arguing that once it had disbursed the checks to the subcontractors, it had no more authority over the checks. The subcontractors were free to endorse the checks or not, deliver them to the employees or not, as they saw fit. Further, it argues, the record does not show that the checks were endorsed and disbursed to the individual employees.

Stevens's argument is disingenuous at best. The fact is that Stevens *did* control the payment to the employee, for all practical purposes, by writing a two–party check. All the subcontractors could do was withhold the checks; they had no other control over the money. Furthermore, the subcontractors had no incentive to withhold the checks since they could not cash them themselves or otherwise obtain the use or benefit of the money represented by the checks.

As to Stevens's argument that there is no showing that the checks were delivered to the employees or cashed by them, it defies belief to suppose that Stevens continued to prepare two–party payroll checks for over two months of the fourth quarter of 1974 in the face of knowledge that the electricians and plumbers working on the Stevens project were not receiving and cashing

---

**2.** Section 3505(a) reads as follows:

"(a) *Direct Payment by Third Parties.*—For purposes of sections 3102, 3202, 3402, and 3403, if a lender, surety, or other person, who is not an employer under such sections with respect to an employee or group of employees, pays wages directly to such an employee or group of employees, employed by one or more employers, or to an agent on behalf of such employee or employees, such lender, surety, or other person shall be liable in his own person and estate to the United States in a sum equal to the taxes (together with interest) required to be deducted and withheld from such wages by such employer."

those checks.[3] It is equally hard to believe that the employees would have agreed to endorse the checks before their employers had done so under an arrangement which would allow the subcontractors to obtain for their own use the funds represented by the payroll checks. Although Stevens suggests that such a possibility rules out summary judgment on the issue of direct payment, in the absence of any evidence that such an unlikely agreement existed between the employer subcontractor and its employees, I need not give it any serious consideration.

In support of its position that Stevens's actions are the legal equivalent of direct payment, the government cites *United States v. Kennedy Construction Co. of NSB, Inc.*, 572 F.2d 492 (5th Cir. 1978). Kennedy was sued under § 3505(a) also. In its case, the facts were that the financially–troubled subcontractor would deliver to Kennedy a payroll summary showing the amount due to each of the subcontractor's employees, including the payroll taxes to be deducted. Kennedy would issue a check for the total amount of the net wages payable to the subcontractor for deposit in a special payroll checking account. The subcontractor prepared the individual payroll checks for countersigning by Kennedy and delivered them to the individual employees. On these facts the district court found that Kennedy had not made direct payments. The court of appeals reversed, holding that the "substance of the transaction was a direct payment by Kennedy to the employees." *Id.*, at 496.

In opposition to the government's motion, Stevens cites a Ninth Circuit § 3505(a) case, *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605 (9th Cir. 1978), in which the court held that summary judgment was not proper where the record showed that Arnold, the general contractor, had set up a special account for a subcontractor and advanced funds to the account, reserving the authority to co–sign all checks drawn on the account. Although the fund was intended for payroll purposes, Arnold's agent co-signed checks drawn by the subcontractor for expenditures other than for payroll. The court found that there were disputed issues of fact as to whether Arnold or the subcontractor deposited the funds to the account; whether Arnold had the ability to control the funds; and whether Arnold did exercise control over the funds.

*Arnold* differs significantly from the cases before this court. As in *Kennedy*, Stevens controlled the actual disbursement of funds to the individual employees. Certainly it controlled the payout of money. Unless and until it prepared a payroll check, there was no way the employees would be paid. The subcontractors could delay or prevent the delivery of the checks, although they had no reasonable motivation for doing so, but they could neither initiate the withdrawal of funds nor divert the funds to their own use.

I find and conclude that, in preparing individual payroll checks for each employee of Cirves Electric Corporation and J & C Plumbing, Inc., Stevens Construction Corp. made direct payments of wages to those employees within the meaning of 26 U.S.C. § 3505(a) and, therefore, is liable in its own person to the United States of America in a sum equal to the taxes (together with interest) required to be deducted and withheld from the wages paid to those employees for the period October 23, 1974, through December 31, 1974.

### ORDER

IT IS ORDERED that the motion for summary judgment of the United States of America is GRANTED with respect to Stevens Construction Corp.

---

**3.** If Stevens personnel had not learned this from working on the same construction site with the electricians and plumbers, they would have found it out when the checks did not clear the bank.