**UNITED STATES of America, Plaintiff,**

**v.**

**TOWNE REALTY, INC., Defendant.**

**Civ. A. No. 81–C–634.**

United States District Court,
E.D. Wisconsin.

Oct. 7, 1983.

Nancy Morgan, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Stanley P. Gimbel, Gimbel, Gimbel & Reilly, Milwaukee, Wis., for defendant.

## DECISION and ORDER

TERRENCE T. EVANS, District Judge.

This is a suit to collect federal income taxes and F.I.C.A. taxes withheld from the wages of the employees of R & E Construction, Inc. The United States has moved for summary judgment.

In February, 1974, Towne Realty, Inc. entered into a contract with the Department of the Navy for the construction of 700 military family housing units at Pearl Harbor, Hawaii. As the general contractor, Towne subcontracted with R & E Construction, Inc. to do carpentry work on the project. The subcontract called for work to begin on June 17, 1974, and specifically provided that the subcontractor would pay all taxes.

However, R & E encountered financial difficulty and was unable to meet its payroll. In order to avoid a delay in the construction project, Towne agreed to meet R & E's payroll. That agreement was set out in a document entitled "Subcontract Supplement" dated January 3, 1975. It provided that "a special bank account shall from this day forth be established for this contract, which bank account is to cover payroll, withholding tax, insurance and benefits. There shall be dual signatures of Mr. Richard Tokunaga and Mr. Alan Himelblau required. Funds will be advanced on the contract to this account to cover the above and charged to the account of R & E Construction."

A special bank account, designated as Payroll Account No. 2, was opened on January 7, 1975, in the name of R & E Construction, Inc., at the City Bank of Honolulu. The signature card for that account authorized five different signature combinations on the checks. They were:

1. Richard Tokunaga, president of R & E, and Vilene Dean, Payroll Manager for Towne.

2. Tokunaga and Alan Himelblau of Towne.

3. Marlene Nada, Payroll Clerk for R & E and Dean.

4. Nada and Himelblau.

5. Himelblau only.

The account was opened with a $1,000 check drawn on Towne's account with the Bank of Hawaii. After the payroll account was opened, the progress payments to R & E called for under the subcontract agreement stopped.

Towne instituted the following procedures for paying R & E's employees. Their weekly timecards were given to Towne's superintendent on the project for approval. The cards were reviewed a second time by Towne at the main office before being submitted to SBC, Inc., a data-processing service bureau. SBC then cut the payroll checks and generated a payroll register showing gross pay, the various deductions, and net pay for each employee. The payroll checks and check register were sent back to Towne where they were compared. The payroll checks

were then signed by Towne and delivered to R & E's office for distribution to the employees. In accordance with this procedure, Towne met R & E's net payroll commencing with the first payday on January 9, 1975, and continuing to the end of the first quarter of 1975. During this time, the net payroll paid by Towne totalled $299,-425.51. All of the checks were signed either by Vilene Dean or Alan Himelblau on behalf of Towne.

The day before the checks were to be distributed to the employees, Towne would make a deposit directly into the payroll account in the amount of the net payroll. Except for one small deposit of $162.79 on February 7, 1975, the payroll deposits represented all of the deposits to the bank account for the period at issue. Although Towne also paid the union benefits for the R & E employees, it did not deposit the federal withholding and F.I.C.A. taxes for R & E employees.

R & E is now defunct, and remains indebted to the United States for employment taxes for the first quarter of 1975.

The issue in this lawsuit is whether under 26 U.S.C. § 3505(a), Towne is liable for the taxes withheld from the wages of R & E employees during the first quarter of 1975. The only dispute is whether a genuine issue of material fact exists as to whether the payment of wages by Towne Realty was a "direct payment" under that statute.

Section 3505(a) provides:

*Direct payment by third parties*—For purposes of section 3102, 3202, 3402 and 3403, if a lender, surety, or other person, who is not an employer under such sections with respect to an employee or group of employees, pays wages directly to such an employee or group of employees, employed by one or more employers, or to an agent on behalf of such employee or employees, such lender, surety, or other person shall be liable in his own person and estate to the United States in a sum equal to the taxes (together with interest) required to be deducted and withheld from such wages by such employer.

The statute was enacted in order to correct a problem posed by net payroll financing in the construction industry. The problem arose when a general contractor or another lender would lend a company sufficient funds to pay their payroll with no provision for the payment of taxes. The intention of the statute was to hold third persons who finance employers' payrolls liable for the withholding taxes as well.

The government relies on *United States v. Kennedy Construction Co.*, 572 F.2d 492 (5th Cir.1978) and *Derr v. United States*, 498 F.Supp. 337 (W.D.Wis.1980), in which payments made under similar circumstances were considered direct payments. Defendant relies on *United States v. Arnold*, 573 F.2d 605 (9th Cir.1978) in which the court determined that summary judgment was inappropriate because an issue of fact existed as to whether the general contractor exercised control over the account funds. Defendant argues that an issue of fact exists here as well.

Under *United States v. Arnold,* in order for a payment to be a direct payment, the payor must have "(1) the ability to control the funds, and (2) the right and legal authority to exercise that control." At 608.

Towne Realty had the ability to control the funds in this case. The signature card for the payroll account allowed Mr. Alan Himelblau, Director of Finance and Administration of the Hawaii division of Towne Realty, to sign the checks himself with his as the only signature necessary. In fact, some of the checks were signed by Mr. Himelblau only. In addition, every check drawn on the account was a payroll check, and every deposit into the account, with the exception of the unexplained deposit of $162.79, was made by Towne in an amount which would cover the payroll. These facts are established by documentary evidence submitted by the government. Defendant attempts to raise an issue of fact as to these matters by the affidavit of Kenneth Morris, Vice President of Towne Realty.

Morris cites the agreement between the parties in which there is stated a requirement that officials of both companies sign the payroll checks. Despite that agreement, however, Himelblau had the ability to draw funds on the account himself. Morris also states that it is his "belief" that the account was used for purposes other than that payroll. Whatever his belief was is not material. The undisputed documentary evidence shows that the funds were used for payroll purposes and for those purposes only. Morris' affidavit does not raise an issue of material fact. The government's motion for summary judgment is granted.

IT IS THEREFORE ORDERED that the motion of the United States of America for summary judgment is GRANTED. The government is ORDERED to submit a proposed order for judgment within 20 days specifying the relief to which it believes it is entitled.